## BURNHAM & PIERCE *v.* DUNKLEE.

The defendant accepted an order, dated February 9, 1853, drawn upon him by one S., in favor of the plaintiffs, of the following tenor: " Please pay to B. & P. $370, on the lease of the Union house, after taking out the notes you held against me, amounting to $300, and interest from February 1, 1853, or about that time, if there should be so much, or to give up the lease to them after I may pay you the notes; then give them the lease, for the purpose of

securing them for the above amount due them as above mentioned." — *Held*, that the legal construction of the order was for the defendant first to pay himself, out of the rents received on the lease, the $300, and interest on the same; and then to pay the balance of the rents to B. & P., to the amount of $370, should they reach that sum, or assign the lease to them; that the acceptance bound the defendant to pay any excess of rents, however small, over the $300, and interest, until the payment should reach the sum of $370.

It appeared that the rents during the continuance of the lease would not amount to a sum sufficient to pay the notes and the $370; that by an arrangement between the parties B. & P. received the rents up to the last quarter, and paid the $300 and interest, and the defendant retained the lease; that at the commencement of the last quarter the defendant directed the tenant to pay the rent to him, and B. & P. did not receive the rent for that quarter. Upon a suit commenced against the defendant upon the order, after the expiration of the lease, — *held*, that he was liable for the amount of that quarter, and that the suit could be maintained without showing any special demand therefor.

ASSUMPSIT. The writ was dated February 26, 1855, and contained four counts, three of which were special, upon an order of the following tenor and date :

" Concord, Feb. 9th, 1853.

" B. F. DUNKLEE: SIR :— Please pay to Burnham & Pierce three hundred and seventy dollars on the lease of the Union house, after taking out the notes you held against me, amounting to three hundred dollars and interest, from February 1st, 1853, or about that time, if there should be so much, or to give up the lease to them after I may pay you the notes; then give them the lease, for the purpose of securing them for the above amount, due them as above mentioned.

(Signed)       S. E. STRAW."

On the back indorsed — " accepted :

B. F. DUNKLEE."

The other count was for money had and received, and interest on money due and owing from the defendant to the plaintiffs

The specification under this count was : Amount of Bean note for $300, assigned and transferred to the plaintiffs. Same amount for money paid. $500 received for rent, to which the plaintiffs are entitled.

The plea was the general issue, and set-off of sundry items of

rent received by the plaintiffs from February 13, 1853, to August 9, 1854, amounting to $546.22.

On the trial of this cause it appeared that on the 6th day of February, 1852, the defendant was the owner of the Union house in Concord, and on that day he entered into an agreement under seal with the said Samuel E. Straw, by which Straw stipulated to enlarge and repair said Union house in the manner specified, furnish a portion of the materials, and complete the same on or before the first day of June, then next; the defendant furnishing in due time the remainder of the materials.

The defendant on his part agreed to pay Straw for the labor and materials so expended and furnished, in rent, which " shall be computed from the first day of February, instant, to the first day of June next, at the rate of $180 per annum, and thereafterwards that rate shall be increased by the addition of twelve per cent. upon the whole sum which the said Dunklee shall have paid out for effecting the additions, alterations and repairs as aforesaid."

" And the said Dunklee agreed to allow and account to said Straw for interest, at the rate of six per cent. from the completion of said house, on the first day of June next, upon the sum that may then be due to him for his services, and materials by him furnished, up to the next quarterly payment of rent, and subsequently upon the residue of said sum remaining outstanding at the expiration of each subsequent quarter," with an agreement that said Straw may underlet to Samuel Stevens.

On the same day, by indentures under seal, duly executed by the defendant and Straw, the defendant demised to Straw the Union house for the term of two years and nine months from the first day of the same February, and Straw covenanted to pay $60 as rent up to the first day of June, then next, and after the first of June to pay annually, during the term, an amount found by adding to $180, twelve per cent. upon the sum which might be expended by said lessor for effecting certain additions, alterations and repairs of the house, as specified in a contract between the parties, of this date, to be paid in the manner therein

specified, in quarterly payments of one fourth of said amount, on the first days of each subsequent September, December, March and June during the term, and for such further time as the lessee may hold the same ; the said Straw covenanting to surrender up the premises to the lessor at the termination of the lease.

It appeared that Straw made the repairs stipulated in said agreement, by the first of June, and that he expended thereon the sum of $852 in labor and materials, and that the defendant furnished materials therefor to the amount, as admitted by the parties, of not less than $550.

And it appeared that Straw entered into the demised premises under said lease, by a tenant, Samuel Stevens, and occupied the house until the assignment to Dunklee, after which the rents were received by the plaintiffs, as hereafter stated, until August 1st, when Dunklee received them.

On the 31st day of January, 1853, the defendant having raised for Straw the sum of $300, which the defendant borrowed of one Bean, and for which he gave his note of that date to Bean, with interest annually, the said Straw gave his notes to the defendant for the same sum, with interest annually, and, by an endorsement on the back of said lease of that date, assigned the same to the defendant, as collateral security for the payment of his notes, being three of $100 each, payable in three, six and nine months.

It further appeared that soon after the acceptance of said order, Burnham & Pierce made an arrangement with Bean for said note of the defendant, and it was agreed that the accruing rents should be received by Burnham & Pierce, and applied to the payment of said note, and that the payment of that note should cancel the notes held by the defendant against Straw.

And accordingly there was paid by Stevens to the plaintiffs, on account of said rents, various sums of money, commencing on the 23d of May, 1853, for rent back to February 21, 1853.

The sums so paid, as arranged between the plaintiffs and Stevens, amounted to about $75 per quarter, and continued up to

August 1, 1854. But there had been no final adjustment between the defendant and the lessee, of the amount of the rent, the sums expended in said repairs not having been fully ascertained. Nor did it appear that the defendant ever agreed to fix the rent at $75 per quarter, or had relinquished his right to claim the rent according to the lease.

It appeared that about the time of the making and acceptance of the order, some investigation had been made as to the sums expended in repairs, though not definitive, and the rent cast up at $81.96 per quarter, and for several quarters the rent was paid accordingly; but afterwards the amount was reduced to $75 per quarter, by an agreement between the plaintiffs and Stevens, or with E. G. Kilburn, acting for Stevens, without the concurrence or assent of the defendant. This was done May 17, 1854, when the plaintiffs refunded to Kilburn, acting as aforesaid, the excess paid before, beyond $75 per quarter, it having previous to that time been paid at $81.96 per quarter.

It appeared that the plaintiffs actually received, on account of the rents, the sum of $431.52, and that the defendant forbid the tenants paying rent to the plaintiffs after August 1, 1854, and that he did not.

The plaintiffs introduced a witness, who testified that soon after the Bean note was paid the parties were in his office, and Pierce, one of the plaintiffs, demanded the lease according to the order; that the defendant admitted that the plaintiffs were entitled to the lease, but he did not want to give it up, as he did not want Stevens turned out. That defendant said it should make no difference; that plaintiffs should have the rent just the same.

And it appeared that the plaintiffs continued to receive the rent as before, until the quarter commencing August 1, 1854, and after that demanded of the tenant the rent of the next quarter. The witness also testified that the Bean note was present at the time, and the plaintiffs demanded of the defendant the lease or payment of the $370, but that the parties differed as to the mode of computing the rent.

No other demand of the lease was shown, or offer to give up

the Bean note to the defendant; nor was any demand proved of the money received by the defendant for rent, other than the aforesaid demand of payment of the $370.

The court instructed the jury that they might award damages for detaining or withholding the lease after the time fixed in the lease for its termination.

"The following questions were submitted to the jury by the court, with the consent of the parties.

"First. How much was due to S. E. Straw from said Dunklee, at the time of the date of this order of Straw upon said Dunklee?

"Second. What amount of damages have the plaintiffs sustained, by reason of the refusal of the defendant to deliver up said lease, according to his contract in accepting the same?

"The jury find that there was due to said Straw from said Dunklee, at the date of said order, the sum of two hundred and ninety-four dollars and eighty-one cents, and that the plaintiffs have sustained damages by reason of the defendant's refusal to deliver up said lease, agreeably to his promise in accepting the same, in the sum of one hundred dollars."

The parties agreed that judgment should be rendered for either party, as this court should direct.

*Flint & Bryant,* for the plaintiffs.

I. The proper construction of the order was for $370, to come out of the lease of the Union house, after taking out of the rent the $300, if there should then remain so much as $370 due. If not so much, then the order was for what did remain due, or for the delivery of the lease to the plaintiffs. And the defendant had his election which to do up to the time the Bean note was paid, in the fall of 1853, and he not delivering the note at that time became liable to the plaintiffs for the amount due Straw in rent. *Stevens* v. *Webb,* 32 C. L. R. 494; 7 C. & P. 60; *Esposita* v. *Bowden,* 82 C. L. R. 962; 4 E. & B. 963; 2 Parsons Contracts 163. The demand was sufficient if any was necessary, which we think was not.

II. The lease and agreement were made at the same time, by the same parties, concerning the ᵃsame subject matter, refer to each other, and should be construed together. By the agreement the $852 is to be paid in the rent of the Union house. The lease is for two years and nine months — rent to be paid " during said term, and for such further term as the lessee may occupy the same." Truly interpreted all together, it means that Straw should occupy the house till the rent amounts to the $852.

*Dana*, with whom were *Bellows* and *Rolfe & Marshall*, for the defendant.

The order was to pay $370 on the lease of the Union house, that is, out of the accruing rents. It was to be paid after taking out the notes of Straw to Dunklee, for $300 and interest. Strictly speaking and according to grammatical construction, the amount to be paid was $370, *after* deducting from it the notes of $300 and interest; i. e. $70 less the interest on the $300. That we contend is the true construction. But if it be held otherwise, and the sum from which the notes of $300 are to be taken is the amount accruing to Straw on the lease, or from rent, then we say,

1. That amount is limited to the rents accruing during the continuance of the lease, which expired Nov. 1, 1854. If it be said that the lease and agreement are to be construed together as one instrument, we still say that the lease expires Nov. 1, 1854; for although the amount expended by Straw was to be paid in rent, yet *no interest* in the house passed by it, and thereᵇ was no lease beyond the two years and nine months. And at the end of that time the defendant might lease it to Straw, or any one else.

2. The amount is further limited to the amount going to Straw on account of the indebtedness to Dunklee for the sums expended by Straw. That amount, as found by the verdict of the jury, is $294.81.

This is less than the amount of the order, and therefore, by the terms of the order and acceptance, *nothing* is due, inasmuch

as the order provides for the payment of $370, " *if there should be so much.*" There was neither due to Straw by Dunklee or accruing on the lease " so much."

We hold the contract of acceptance to be an entire contract, and indivisible, and that the defendant could not be compelled to pay anything until the *whole* is payable, by the terms of the contract. 2. Parsons on Contracts 163, 164, and 29 to 32; *Russell* v. *Nicoll*, 3 Wendell 112.

If it be contended that the defendant should have assigned the lease to the plaintiffs, we say that the order is in the alternative, and the defendant might elect either to pay or assign the lease. And he would be under no obligation to do *either* until the time for doing *both* had arrived, and then the promissor has his election, as the alternative belongs to him. 2 Parsons on Contracts 163, 169, 170; Story on Con., sec. 969.

Again, there was no sufficient demand for the assignment of the lease. The demand stated was waived, and the plaintiffs continued to receive the rent as before. There was no offer by the plaintiffs to give up the Bean note to the defendant. Besides, the plaintiffs did not offer at any time an assignment to be executed by the defendant, and we hold that to be essential.

The plaintiffs cannot recover under the count for money had and received. The relation of the parties is measured wholly by the acceptance, and if the suit cannot be maintained on that, the plaintiffs have no remedy. Besides, there was no demand by the plaintiffs of the money received by the defendant for rent.

Eastman, J. On the 6th of February, 1852, Dunklee, the defendant, leased to Straw the Union house for the term of two years and nine months, from the first day of that month. The lease of course would expire on the first day of November, 1854.

The rent of the house was to be $60 for the first four months, and then $180 a year, with the addition of twelve per cent. upon the amount of expenses and repairs to be made by Dunklee before the first of June.

Straw had assisted Dunklee in repairing the house to the amount of $852, and this sum was to be paid by the rent of the house upon the lease; $60 of it cancelling the rent for the first four months, and the balance, with the interest thereon, to pay the rent to Dunklee quarterly as it fell due.

Thus stood the matter between Straw and Dunklee on the first of June, 1852. Dunklee was indebted to Straw in the sum of $792, and Straw had a lease of the premises until the first of November, 1854, the rent of which was to be paid quarterly by offsetting it, as it fell due, against an equal amount of Dunklee's indebtedness. Straw could not call upon Dunklee for the amount due him, neither could Dunklee call upon Straw for cash for the rent. The rent and indebtedness were to cancel each other.

Such we understand to have been the position of Straw and Dunklee towards each other up to January 31, 1853, when Dunklee let Straw have the $300. In the meantime Straw, by the permission of Dunklee, had let the house to Stevens, and Stevens was paying Straw the rent therefor.

On the 31st of January, 1853, Dunklee let Straw have $300, having borrowed the money of Bean and given his note for the same; and Straw gave Dunklee his three notes for $100 each, and as security for the same assigned to Dunklee the lease, with the condition that the assignment should be void if Straw should pay the notes in three, six and nine months. This transaction was entirely independent of the original contract between Straw and Dunklee, and has the same legal effect between them as though Straw had made the arrangement with a third person.

On the 9th of February, 1853, nine days following the advancing of the money by Dunklee to Straw, and the assignment of the lease, Straw drew the order which forms the foundation of this suit. This order is in the alternative, and our construction of it is this: for Dunklee to pay out of the rents to be received of Stevens, first, himself the $300 and interest on the same; and then $370 to the plaintiffs, or so much as there should be left on the lease after the payment of the $300 and interest,

whatever the amount might be ; or else give up the lease to the plaintiffs. It was at the option of Dunklee to pay the balance of the rents over and above his $300, or to surrender the lease. And this order he accepted, and thereby bound himself to a compliance with its terms. He was first to satisfy himself for the $300, and was then bound to pay over the balance of the rents, as they should fall due, to the plaintiffs, or give them the lease.

Soon after the acceptance of this order the plaintiffs took up the Bean note, and by an agreement between them and Dunklee they received the accruing rents from Stevens, and applied them to the payment of the note ; and the payment of that note was to cancel the notes held by Dunklee against Straw for the $300. This agreement having been understandingly entered into by the parties interested and competent to make the same, disposes of all questions in regard to the notes. They were paid ; both the Bean note and Straw's notes. The rents were received and paid the Bean note, and the payment of that was to be *ipso facto* payment of the others. These notes having been paid, cannot be revived, and may be laid out of the case, so far as any recovery or off-set can be had upon either in this suit. They ought to have been surrendered ; the Bean note to Dunklee, and the Straw notes to him.

The Straw notes being paid, the balance of the rents or the lease belonged to the plaintiffs ; and Dunklee was liable to pay over the rents to them, or assign to them the lease. Without any definite agreement to that effect, it appears from the case that Dunklee retained the lease, but the plaintiffs continued to receive the rents until August 1, 1854 ; three months before the termination of the lease. This course was desired by Dunklee, and acquiesced in by the plaintiffs. On the first of August, 1854, Dunklee ordered the tenants to attorn to him, and no rent has since been paid to the plaintiffs. The whole amount of the rents to the expiration of the lease would not be enough to pay the $300 and interest, and the $370, the amount of the order.

As we view the case, then, the whole controversy is narrowed

down to the rent of the last three months, and for that we think the defendant is liable in this suit. The action was not commenced till after the lease had expired, and not till after the defendant must be presumed, in the absence of evidence to the contrary, to have received the rent. By the acceptance of the order, he had agreed to pay the balance of the rents after the Straw notes were satisfied, or assign the lease. The statement by the defendant that he did not want to give up the lease, and that the plaintiffs should have the rents just the same, and then acquiescence in this course by receiving the rents thereafter, may be regarded as an election by the defendant to pay over the rents instead of surrendering the lease, and of the plaintiffs' consent thereto.

For the last quarter, therefore, the defendant is liable. What that amount shall be the plaintiffs have themselves determined. They demanded and received of Stevens $75 a quarter, and they can demand of the defendant no more. For that sum, with interest from the date of the writ, the plaintiffs should have judgment. The amount of rent to be paid by Straw to Dunklee is a matter between them and the defendant upon Dunklee's lease to Straw. The rent to be paid by Stevens to Straw was what was in controversy between the parties to this suit; for one quarter of which only is the defendant liable.

It was not necessary for any special demand to be made upon the defendant for the payment of the $75. He had accepted the order, and the legal effect of the acceptance was to pay the rent as fast as received, after the payment of the $300. The liability has become fixed by the acceptance, and it is a general rule that where there is a precedent debt or duty, no demand need be shown before action brought; it being the duty of the debtor to seek out his creditor and tender him the money. *Birks* v. *Trippet*, 1 Saund. 33 ; *Carter* v. *Ring*, 3 Camp. 459 ; Coke Litt. 210, b, note 1 ; Chitty on Bills 249.